100 N.J. Super. 327 (1968)
241 A.2d 853
CONTINENTAL FINANCE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CAMBRIDGE LEE METAL CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY AND UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 5, 1968.
*330 Mr. William S. Katchen for plaintiff (Messrs. Ravin & Ravin, attorneys, Mr. David N. Ravin of counsel).
*331 Mr. Donald A. Resnikoff, Assistant United States Attorney (Mr. Matthew J. Scola, Assistant United States Attorney, on the brief for defendant, United States of America, Mr. David M. Satz, Jr., United States Attorney).
HAND, J.S.C.
This case involves a determination as to the relative priorities between Continental Finance, Inc., and the United States, to an available fund of $10,812 in the above-entitled case. Continental Finance is basing its claim to a first priority upon a security agreement, dated December 19, 1962, between it and Centre Trucking Co., Inc., Newark, New Jersey, providing for the assignment of accounts receivable now in existence or hereafter created or coming into existence for advances to be made by Continental and the filing, on January 11, 1963, of a financing statement executed in connection with the aforementioned security agreement. The United States is basing its claim to priority under the lien accorded it under Title 26 United States Code, Section 6321. The date on which the earliest tax assessments arose was February 4, 1964. Notices of Federal Tax Liens were recorded with the Register of Deeds, Essex County, Newark, New Jersey on February 10, 1964.
The following facts have been stipulated by the parties:
1. On or about December 19, 1962, Continental Finance, Inc. (herein "Continental") entered into a financing arrangement with Centre Trucking Co., Inc. (herein "Centre"), whereby Continental purchased certain accounts receivable and choses in action of Centre.
2. Subsequently, and for valuable consideration, on January 10, 1963, Continental obtained a security interest, as defined under the Uniform Commercial Code, N.J.S.A. 12A:1-201 (37), in all accounts receivable, all claims against third parties then in existence or thereafter created, together with all personal property, then owned or thereafter acquired, belong to Centre.
3. A Financing Statement, covering said collateral, was filed by Continental with the office of the Secretary of State of New Jersey on January 11, 1963.
4. Relying on its security interest in all of the personal property aforesaid, Continental, after January 10, 1963, continued to advance additional sums of money to Centre.
*332 5. Among the contract rights[1] collateralizing Centre's indebtedness to Continental, were the proceeds of an executory contract made on or about October 17, 1962 between Centre and Garden State Steel Company (later named Cambridge Lee Metal Co., Inc.), for the trucking, warehousing, and storage of materials by Centre in consideration for Garden State Steel Company's promise to pay at a fixed rate per ton.
6. All of the contract rights and proceeds, thereof, to be earned by Centre became the property of Continental by virtue of Continental's security interest in said collateral and default under said agreement by Centre.
7. The parties stipulated that prior to the filing of the Federal Tax Lien, February 10, 1964, Continental Finance entered into and obtained a perfected security interest in the aforementioned collateral of Centre.
8. The proceeds of the contract between Centre and Garden State Steel aggregating $10,812 were earned by Centre after the date of filing of the tax lien, to the extent of Continental's liens, were secured by virtue of the said Security Agreement.
9. Pursuant to its Security Agreement Continental continued to advance money to Centre; as of the date of the filing of government tax lien Continental was owed a sum in excess of $50,000, exclusive of interest.
10. The filed tax liens indicate unpaid taxes due to the government from Centre in an amount in excess of $59,000.
11. As of February 4, 1964 and continuing to the present date Continental is owed a sum in excess of the available funds of $10,812 from Centre.
12. Continental nor any of its officers, agents or servants had actual notice of the filed government tax lien prior to the advancement of funds from Continental to Centre, pursuant to the said Security Agreement.
Title 26, United States Code, Section 6321, states the following:

6321 LIEN FOR TAXES
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal belonging to such person." August 16, 1954, c. 736, 68 A Stat. 779.
*333 The Federal Tax Lien Act was amended in 1966. The pertinent provisions of the amendment are as follows:

6323 VALIDITY AND PRIORITY AGAINST CERTAIN PERSONS
"(a) PURCHASES, HOLDERS OF SECURITY INTERESTS, MECHANIC'S LIENORS, AND JUDGMENT LIEN CREDITORS.  The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

* * * * * * * *
ETC.  (c) PROTECTION FOR CERTAIN COMMERCIAL TRANSACTIONS FINANCING AGREEMENTS
(1) IN GENERAL  To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which 
(A) is in qualified property covered by the terms of written agreement entered into before tax lien filing and constituting 
(i) a commercial transactions financing agreement,
(ii) a real property construction or improvement financing agreement, or
(iii) an obligatory disbursement agreement, and
(B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.
(2) COMMERCIAL TRANSACTIONS FINANCING AGREEMENT.  For purposes of this subsection 
(A) DEFINITION.  The term "commercial transactions financing agreement" means an agreement (entered into by a person in the course of his trade or business) 
(i) to make loans to the taxpayer to be secured by commercial financing security acquired by the taxpayer in the ordinary course of his trade of business, or
(ii) to purchase commercial financing security (other than inventory) acquired by the taxpayer in the ordinary course of his trade or business;
but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.
(B) LIMITATION ON QUALIFIED PROPERTY  The term "qualified property", when used with respect to a commercial transactions financing agreement, includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing.
*334 (C) COMMERCIAL FINANCING SECURITY DEFINED  The term "commercial financing security" means (i) paper of a kind ordinarily arising in commercial transactions, (ii) accounts receivable, (iii) mortgages on real property, and (iv) inventory.

* * * * * * * *
(h) DEFINITIONS  For purposes of this section and section 6324 
(1) SECURITY INTEREST  The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

* * * * * * * *
Section 114 of Public Law 89-719, 80 Stat. 1146 provides that Section 6323, as amended, shall apply after November 2, 1966 regardless of when a lien or a title of the United States arose or when the lien or interest of any other person was acquired. This general rule as to the effective date of the 1966 Amendment has several exceptions which are not applicable to the case sub judice.
Perfected Federal Tax Liens attach to all after-acquired property of the taxpayer. Sea Board Sur. Co. v. United States, 306 F.2d 855 (9th Cir. 1962). Under Section 6321, which provides for a Federal Tax Lien upon all property and rights to property, whether real or personal, the government has a lien upon the intangible property of a delinquent taxpayer and the tax lien is a continuing lien and will attach to obligations which come into existence thereafter. Beeghly v. Wilson, 152 F. Supp. 726 (D.C. Iowa 1957); see also Edison Bank v. Mayer, 202 F. Supp. 620 (D.C.N.J. 1962); United States v. Bailey, 137 F. Supp. 578 (D.C. Conn. 1955). As in the case sub judice, a Federal Tax Lien attaches to a claim for work and labor. Citizens State Bank v. Vidal, 114 F.2d 380 (10th Cir. 1940). A property right of a delinquent taxpayer may be born with a Federal Tax Lien on it, but it is necessary that a property right be born to the delinquent taxpayer before there is anything to *335 which the Federal Tax Lien can attach. Wolverine Ins. Co. v. Phillips, 165 F. Supp. 335 (D.C. Iowa 1958), appeal dismissed 283 F.2d 518 (1960). The rights of the Federal Government can rise no higher than the rights of the delinquent taxpayer and state law determines whether the taxpayer has any property or right to property to which the Federal Tax Lien can attach. Acquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); U.S. v. Brosnan et al., 363 U.S. 237, 80 S.Ct. 1108 (1960). Spagnuolo v. Bonnet, 16 N.J. 546 (1954). The determination of priority of competing liens on the same property is however a federal question. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1954); United States v. Equitable Life Assur. Soc. of U.S., 348 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966). This does not mean that the "priority" issue can only be determined by a federal court. The case of United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963) does not so hold, and state courts have regularly exercised their authority to determine in the first instance the question of priority in regard to federally created liens. In Re: Hiawatha Do It Yourself, Inc., 82 N.J. Super. 399, 405 (Cty. Ct. 1964).
Priority of a Federal Tax Lien provided by section 6321 as against liens created under state law is governed by the Common Law rule of first in time, first in right. United States v. Clinton, 260 F. Supp. 84 (D.C.N.Y. 1966); United States v. Roessling, 280 F.2d 933 (5th Cir. 1960). The first in time, first in right rule is applied even if the property against which the lien is sought to be enforced was after acquired. United States v. Beaver, 252 F.2d 486 (3rd Cir. 1958). However, before the rule is applied the state created lien must be specific and perfected in the federal sense. United States v. Morrison, 247 F.2d 285 (5th Cir. 1957). In determining the priority of Federal Tax Lien over competing liens there has been a persistent application of the "choate lien test" first in insolvency cases, then in statutory lien cases and finally in nonstatutory contractual *336 lien cases. United States v. Bond, 279 F.2d 837 (4th Cir. 1960).
A choate state created lien takes priority over later Federal Tax Liens. Crest Finance Co. v. United States, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342 (1961). Under law developed by federal decisions, to be fully choate, a lien must attach to specified property and the amount of the lien and identity of lienor must be established. United States v. Equitable Life Assur. Soc. of United States, Supra; United States v. Albert Holman Lumber Co., 206 F.2d 685 (5th Cir. 1953). A competing state-created lien has no protection against a recorded Federal Tax Lien until it becomes choate in the federal sense. Fore v. United States, 339 F.2d 70 (5th Cir. 1964), certiorari denied, 381 U.S. 912, 85 S.Ct. 1532, 14 L.Ed.2d 433 (1965).
Section 6323 (c), as amended, supra, provides that security interests arising under commercial transactions financing agreements entered into before tax lien filing in certain cases are to be protected against Federal Tax Liens, even though the funds are advanced under the agreement, or the property referred to in the agreement comes into existence, after the tax lien filing. However, protection is afforded only where the loan is made not later than 45 days after the tax lien filing (unless actual notice or knowledge of the filing is obtained sooner) and only where the inventory, accounts receivable, etc., are acquired before 45 days have elapsed. The accounts receivable which made up the available fund of $10,812 were the result of invoices dated from April 1, 1964 to July 26, 1964. The Federal Tax Lien was filed February 10, 1964. As mentioned previously the Federal Tax Lien Act of 1966 controls the priority issue. In order to entitle Continental Finance to priority the accounts receivable must meet the statutory tax lien definition of "qualified property" which is security acquired by the taxpayer before the 46th day after the date of tax lien filing. Therefore, the critical date is March 26, 1964. It must be determined if the identity of the lienor, the property subject to *337 the lien, and the amount of the lien, could be ascertained on March 26, 1964 which is 45 days after the filing of the Federal Tax Lien. If Continental's lien meets this three part federal test then it is entitled to priority over the United States.
Applying the above rationale to the facts in the instant case, this Court observes that Continental Finance, as of March 26, 1964, has met the first and third tests, namely, the identity of the lienor and the amount of the lien. However, the Court further observes that the lien of Continental, as of March 26, 1964, fails to meet the second test, namely, that the property subject to the lien be specific and definite. It is clear that as of March 26, 1964, the various accounts receivable due from Cambridge Lee Metal Co. which comprise the present available fund of $10,812 were not in existence, the earliest of such accounts receivable not coming into existence, until April 1, 1964. Since Continental Finance fails to meet the three tests set forth above, it did not have a choate lien, and, lacking such a choate lien, its lien is inferior to the lien of the United States. It must be remembered that the proceeds of the contract between Centre and Garden State Steel aggregating $10,812 were earned by Centre AFTER the date of the filing of the tax lien.
The Federal Tax Lien Act of 1966 reaffirms the Federal Choate Test as regards the requirement that the identity of the property must be ascertained within the critical period. 26 U.S.C.A. § 6323 (h) (1) in defining a security interest states that a security interest exists at any time if at such time, the property is in existence and the interest is protected under local law against a subsequent judgment lien arising out of an unsecured obligation; and to the extent the holder has parted with money or money's worth. (Emphasis added). For federal tax purposes a security interest is not considered as existing until these conditions are met even though local law may relate a security interest back to an earlier date and even though it *338 might be an effective security interest as of the earlier date under the Uniform Commercial Code. Pub. L. 89-719, 1966 U.S. Code Cong. and Adm. News, p. 3734.
Continental Finance relies heavily upon the case of In Re Halprin, 280 F.2d 407 (3rd Cir. 1960). This case dealt with a situation in which the taxpayer borrowed money and gave to his creditor as security an irrevocable assignment in writing of all sums to become due in the future under a then executory contract with a third party (purchaser of jackets). The third party consented to the assignment and agreed to pay the creditor directly when the taxpayer delivered. The Court found that the third party purchaser's obligation to pay for the jackets was not property of the taxpayer and therefore not subject to the Federal Tax Lien. This conclusion seems logical since when the jackets were manufactured and delivered to the third party, its unqualified obligation to pay, as it then came into existence, ran solely to the creditor and therefore it did not constitute "property belonging to" the taxpayer. Under the factual situation existing in Halprin it is clear that the third party's obligation to pay money was property of the creditor. As mentioned earlier in this decision state law determines whether the taxpayer has any property or right to property to which the Federal Tax Lien can attach. Acquilino v. United States, Supra; United States v. Brosnan, Supra; Spagnuolo v. Bonnet, Supra. Since all relevant transactions in Halprin occurred in Pennsylvania it is presumed that the Court was applying that state's property law. Halprin did not deal with priority as between a Federal Tax Lien and one created under state law. On the contrary, in Halprin it was concluded that there was no Federal Tax Lien at all on the property (3rd party's obligation to pay) which was the subject matter of that litigation.
Such is not the case sub judice. Here we have a valid Federal Tax Lien. The question presented is one of priority. As distinguished from Halprin, Garden State Steel (the third party) owed money directly to Centre (the taxpayer) *339 after Centre performed under the contract between the parties. This obligation of payment on the part of Garden State Steel was a property right of Centre (the taxpayer) to which the Federal Tax Lien as well as Continental's lien attached. The existence of both liens poses the question of priority and the application of federal law. Continental Finance has not shown that its lien upon the accounts receivable in question ripened into a choate lien, in the federal sense, within 46 days of the filing of the Federal Tax Lien.
Continental Finance argues that the Federal Choate Test has been met since the identity of the property which was the subject matter of its filed security interest was known. Continental contends that the property consisted of "contract rights" which came into existence the moment Centre Trucking Co. contracted to truck, warehouse and store materials for Garden State Steel (later named Cambridge Lee Metal Co., Inc.) in consideration for Garden State Steel Company's promise to pay at a fixed rate per ton. This contract came into existence on or about October 17, 1962. Continental relies upon N.J.S.A. 12A:9-106 and 204. N.J.S.A. 12A:9-106 defines a contract right as any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper.
N.J.S.A. 12A:9-204 reads as follows:

"WHEN SECURITY INTEREST ATTACHES; AFTER-ACQUIRED PROPERTY; FUTURE ADVANCES
(1) A security interest cannot attach until there is agreement (subsection
(3) of 12A:1-201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching.
(2) For the purposes of this section the debtor has no rights.
(c) in a contract right until the contract has been made:
(d) in an account until it comes into existence."
Based upon the two aforementioned statutes Continental reasons that a security interest in a contract right *340 is recognized in New Jersey and that such a security interest attaches the moment the contract is made and therefore the identity of the property was ascertained before the existence of the Federal Tax Lien. In substance Continental is distinguishing an account and a contract right. N.J.S.A. 12A: 9-106 defines an account as any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper. In other words an account is the ordinary commercial account receivable and contract rights are potential accounts. A contract right becomes an account as performance is made under the contract. New Jersey's characterization of a lien as specific and perfected, however conclusive it may be as a matter of state law, is not conclusive upon the United States when asserting priority for its tax claims. United States v. Waddill, Holland and Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945); United States v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).
A contract right, being a potential account receivable, is contingent. The Federal Courts, in determining whether a lien is choate, have ruled that a contingent lien or encumbrance is not entitled to priority over a Federal Tax Lien. A competing nonfederal lien is choate when nothing further needs to be done to make it enforceable. To be choate the competing lien must be definite at the critical time and not merely ascertainable in the future by taking further steps. Illinois Ex Rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (1946). With respect to a judgment lien on personal property, to be choate the creditor must obtain an execution or levy where state law requires it before the judgment becomes a lien on such property. Fore v. United States, 339 F.2d 70 (5th Cir. 1964). Where a creditor sues a debtor-taxpayer and attaches property or garnishes credits, the lien of the attachment or garnishment is inchoate prior to judgment. United States v. Security Trust and Savings Bank, Supra; United States v. Hawkins, 228 F.2d 517 (9th Cir. 1955). One *341 reason why an attachment lien is inchoate before judgment is that the lien may be defeated if judgment is entered for the defendant. The Supreme Court of the United States, in United States v. Security Trust and Savings Bank, Supra, reasoned as follows:
"The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate  merely a lis pendens notice that a right to perfect a lien exists. Nor can the doctrine of relation back  which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment  operate to destroy the realities of the situation."
It has been held that an attachment lien, prior to judgment, is inchoate even though under state law an attachment lien is regarded as an execution in advance and as a perfected lien. United States v. Acri, Supra. Applying the Supreme Court's logic in declaring an attachment lien inchoate it necessarily follows that contract rights are equally inchoate. That which is contingent must be inchoate. If Centre Trucking never performed the contractual obligations owed to Garden State Steel nothing would have ever come into existence upon which a lien could attach. Also, if Centre Trucking attempted to execute its duties which resulted in a breach of the contract or a non compliance with that called for, no right which could be considered property would have come into existence upon which a lien could attach.
Federal Courts have held that contingent rights of the taxpayer are not "property or rights to property" to which a Federal Tax Lien could attach. In Home Ins. Co. v. B.B. Rider Corp., 212 F. Supp. 457 (D.C.N.J. 1963) the issue was whether the federal government or two conditional vendors were entitled to the proceeds of a fire insurance *342 policy issued to the taxpayer, the insured property having been destroyed by fire. The tax lien was filed before the fire. The court recognized the existence, before the fire, of a bilateral executory contract between the taxpayer insured and the insurer. Among the several holdings of the court was the proposition that prior to the time when a party to a bilateral contract performs and thereby obliges the other party to perform, the contract is wholly executory and promise to pay is contingent upon whatever performance was bargained for in exchange. Only by conferring an agreed equivalent benefit can the promisee acquire an enforceable right to the promised payment. The court concluded that where it is entirely uncertain whether the conditional promise to pay will ever become unqualified and enforceable, the interest of a party to the contract is purely contingent and therefore not "property and rights to property" to which a tax lien under Section 6321 could attach. The court pointed out that until the fire occurred no lien could arise in favor either of the government or any other claimant upon the interest, whatever it was, of the taxpayer in the fire insurance policies. So also, in City of New York v. United States, 283 F.2d p. 829 (2nd Cir. 1960) the court held that a Federal Tax Lien attaches only to the extent of a taxpayer's property interest, and is not a proper basis for a levy on contingent rights before they come into being.
Therefore since a taxpayer's contingent interest is not property to which a Federal Tax Lien could attach it follows a debtor's contingent interest is not property to which a security interest could attach and therefore meet the federal choate lien test.
Continental Finance Company's security interest in the contract rights was a caveat of a more perfect lien to come. This Court concludes, applying the federal standard, that the Federal Tax Lien is superior to the security interest in the contract rights since such security interest is inchoate, it being based upon unborn accounts receivable as collateral security, which is a contingent obligation, which did not *343 ripen into an indebtedness until after 45 days from the filing of the Federal Tax Lien.
Based upon the above reasoning this Court finds that the United States is entitled to first priority to the available fund of $10,812.
NOTES
[1] Note: N.J.S.A. 12A:9-106 expressly provides for security interest presently created in contract rights, to be earned in the future.