WYOMING TIMBER PRODUCTS CO., a Wyoming corporation, et al., Appellants (Defendants below),

v.

Ralph David CROW, Appellee (Plaintiff below),

v.

UNITED STATES of America, (Interpleaded defendant on counterclaim below).

No. 4056.

Supreme Court of Wyoming.

Aug. 18, 1972.

Henry A. Burgess, Burgess, Kennedy & Davis, Sheridan, for appellants.

A. G. McClintock, of McClintock, Mai, Urbigkit & Moriarity, Cheyenne, C. L. Bates, Rawlins, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Plaintiff filed his complaint on May 22, 1967, claiming ownership of approximately 1,181,000 board feet of logs (valued at $35,000) detained by defendants, asking for the recovery of his property together with $25,000 damages. The following day a writ of replevin issued. Since Wyoming Timber Products Company (hereinafter referred to as Wyoming Timber) had already caused 128.15 cords of the logs to be loaded upon railroad cars, the parties agreed that the price therefor would be paid by the purchaser to the plaintiff and the Carbon County Sheriff to await outcome of the replevin action (subsequently the proceeds from the sale, $2,306.70 were delivered to Wyoming Timber, which on March 11, 1967, had been issued a certificate of sale from the Internal Revenue Service for the timber in question).[1] The remainder of the logs were delivered to plaintiff shortly after May 22, 1967. Upon trial of the cause to the district court without a jury, the court found that plaintiff had suffered no loss or injury by reason of the interruption of his possession from February 7, 1967, to May 22, 1967, except as he was deprived of the sales price of the 128.15 cords, and judgment was entered confirming plaintiff's title to the logs replevined by him and for recovery from Wyoming Timber of the amount of $2,182.40. The court dismissed the counterclaim in interpleader of Wyoming Timber against the United States.

---

1. About February 7, 1967, the Internal Revenue Service had seized the logs under lien for delinquent taxes, and at a subsequent sale Wyoming Timber's bid of $5,021.21 was accepted March 11, 1967. The United States was interpleaded as a defendant in plaintiff's case, and the cause was removed to the United States District Court for the District of Wyoming. Judgment was entered for Wyoming Timber, but after appeal to the 10th Circuit the cause was reversed and by direction of that court remanded to the state court. After entry of the judgment in the United States District Court and prior to the remand to the state court the proceeds from the sale by Wyoming Timber ($2,306.70) was delivered to it.

Wyoming Timber and the other defendants, employed by it to load the logs, have appealed; but before any enumeration of asserted errors, some background information is essential, and excerpts from the trial court's findings will supply this:

"2. By Timber Sale Contract dated January 7, 1959, the United States * * * through the Forest Service * * * authorized R. R. Crow & Co. * * * to cut, remove and purchase a quantity of timber located on lands in the Medicine Bow National Forest, Carbon County, * * * such timber to be paid for at an agreed price * * * with the * * * payment to be determined after the cutting, removal and scaling of the logs * * · *.

"3. [R. R.] Crow [& Co.] was further required by said agreement to maintain deposits with the Forest Service, including a minimum advance payment. On or about November 10, 1966, there was on deposit with the Forest Service ample funds to pay the Forest Service for stumpage charges on timber * * * involved in this action.

"4. By order made and entered June 4, 1962 in the District Court * * * County of Carbon, R. R. Crow was appointed receiver of the property and assets of R. R. Crow & Co. * * * [He] entered upon the performance of his duties and on November 10, 1966, was acting as such receiver.

"5. Shortly before November 10, 1966, the receiver was without funds necessary to carry on the business of the company, either in the cutting and removal of logs or in the milling thereof and was also indebted to a considerable extent to contract loggers who had rendered services in the cutting and removal of timber as authorized in the Timber Sale Contract, including a substantial indebtedness to the plaintiff * * *. At that time said receiver orally offered to plaintiff and the other loggers an opportunity to cut and remove logs for their own account

and at their own expense * * *. Plaintiff was the only one who accepted this proposition which is embodied in a letter dated November 10, 1966.

"6. By said letter * * * the receiver advised plaintiff that he was unable to continue milling and shipping operations and offered to him the opportunity to cut and remove logs upon his own account, applying the advance stumpage payments on deposit with the Forest Service as payment for logs so removed, with credit for this amount to be given the receiver by plaintiff against the amount then owed by the receiver to plaintiff. The receiver specifically advised that the logs so removed would belong to plaintiff to be sold by him to whomsoever he chose, crediting the receiver only with a set-off for the stumpage used. Permission was granted in said offer to use a portion of the yard facilities of the company for storage of logs so cut and removed.

"7. * * * During the period between November 10, 1966 and February 7, 1967, plaintiff, at his own expense in excess of $39,000 and with no expectation of or agreement for reimbursement or payment by the receiver, cut and removed from said forest 1,180,000 board feet of logs, as determined by scale measurement of the Forest Service, and the agreed stumpage cost * * * was * * * charged by the Forest Service against the deposit of the receiver. Said receiver received credit for such costs upon his then existing obligation to plaintiff.

* * * * * *

"10. Under date of August 12, 1960, R. R. Crow & Co. executed and delivered to one Huddlestun Lumber Co., in consideration for the advance by that company of the sum of $275,000, its separate mortgages covering real and personal property of the company. * * *

"11. On or about November 26, 1966, * * * chattel mortgage, together with the indebtedness secured thereby was for

valuable consideration transferred to plaintiff * * * and his brother, John Crow. * * *

"12. Following the transfer to them * * * plaintiff and John Crow took physical possession of all tangible personal property of R. R. Crow & Co. and have remained in possession thereof, without assertion of adverse right or claim, either by Huddlestun, the United States Internal Revenue Service or the defendants herein, except as * * * to [1,180,000 board feet of] the logs * *.

"13. In March, 1967, plaintiff and his brother, at their own expense and through their attorney, caused to be instituted in this Court an action in the name of Huddlestun Lumber Co. as plaintiff, the object and purpose of which was to recover judgment upon the unpaid notes and foreclose the real estate mortgage which had been given by R. R. Crow & Co. to Huddlestun and assigned by it to plaintiff and John Crow at the same time that the assignment of the chattel mortgage was executed and delivered. Said action resulted in judgment in favor of Huddlestun in the amount of $492,745 * * * and an order for the sale of the real estate covered by that mortgage. Sale was duly had and at the sale thereof certificate of sale was issued to Huddlestun upon a bid of $300,000. Following such sale the same was confirmed by this Court and deficiency declared of $207,755. The certificate of sale was assigned to plaintiff and his brother and deed covering the real property * * * delivered to them * * *.

*     *     *     *     *     *

"16. * * * R. R. Crow & Co. was indebted to the United States for internal revenue taxes in an amount in excess of $100,000; * * * during the period from January 13, 1961 through March 2, 1967, the Internal Revenue Service filed in the office of the County Clerk of Carbon County * * * various notices of federal tax liens based on said claims. During said period no action was taken by said Internal Revenue Service to levy upon or otherwise subject any rights of R. R. Crow & Co. under said Timber Sale Contract to the claims of the Internal Revenue Service and no attempt was made by it to sell, assign or otherwise dispose of the company's rights under said agreement.

"17. * * * about February 7, 1967, at a time when said logs were located in a storage yard of R. R. Crow & Co. near Saratoga * * *, having been placed thereon by plaintiff after scaling by the Forest Service * * * Internal Revenue Service agent * * * issued and served upon R. R. Crow & Co. a Notice of Seizure relating to the said logs * *.

*     *     *     *     *     *

"19. * * * on March 11, 1967, after notice of sealed bid sale had been mailed to various prospective purchasers, the Internal Revenue Service accepted the bid of defendant, Wyoming Timber * * *, in the amount of $5,021.21 as payment for said logs and issued Certificate of Sale of Personal Property, stating that the property had been acquired by the United States from R. R. Crow & Company as a result of a sale made in accordance with Section 6335 of the Internal Revenue Code and Regulations thereunder."

In their appeal, defendants state that aside from many factual errors the trial court erred in finding and concluding as a matter of law that (1) plaintiff acquired any right to the timber contract or to the logs, and (2) the lien of the chattel mortgage of August 12, 1960, extended to logs cut in 1966 and was prior in right to the tax lien, under which Wyoming Timber claimed its right to the logs.

Plaintiff's response to this appeal is that first, he was the owner of the logs at the time of the levy by the Internal Revenue Service on February 7, 1967, and second, if R. R. Crow & Co. had any interest in the logs on that date, such title was subject to a senior lien in his and his brother's favor, which gave them sufficient interest

in the property to justify the retaking of possession—maintaining, further, that all matters happening thereafter even if not consistent with foreclosure of mortgages were at worst irregularities, which did not operate to vest indefeasible title in anyone purchasing through the foreclosure of a junior lien.

Although defendants maintain that the trial court erred in finding plaintiff acquired any right to the timber contract or to the logs, they do not specifically challenge any particular finding, which circumstance makes it unnecessary in most instances to discuss the evidence adduced.

■ As to defendants' first point, they say that "No property right can be created by the private party in such contract because of the terms of the timber contract[2] itself and because of the statutes of the United States." This argument, limited of course in its application here to the specific wording of the contract, must be viewed in the light of the settled rule that a provision forbidding one party to make an assignment of his right is solely for the advantage of the other party who is under the correlative duty. Recovery Oil Co. v. Van Acker, 79 Cal.App.2d 639, 180 P.2d 436, 438; Hobbs v. McLean, 117 U.S. 567, 576, 6 S.Ct. 870, 29 L.Ed. 940; Isaacs v. De Hon, 9 Cir., 11 F.2d 943, 944; McPhail v. United States, 181 F.Supp. 251, 254, 149 Ct.Cl. 179; 4 Corbin, Contracts § 873, p. 496 (1951).

■ Defendants' unsupported comment that both the Internal Revenue Service and the Forest Service are agencies of one sovereign government and not two separate legal entities would seem in the context of the argument to be a non sequitur since *neither* agency presented any objection to the arrangement whereby the contract logger Crow would cut the logs at his own expense without any liability to the receiver for cost incurred and was to retain the proceeds realized from the timber; and defendants have shown no right to object. In that connection, we have carefully reviewed the cases they cite to support the contention that plaintiff had no property rights in the logs, and we have given special attention to Maffia v. United States, 142 F.Supp. 891, 135 Ct.Cl. 604; Maffia v. United States, 163 F.Supp. 859, 143 Ct.Cl. 198; United Pacific Insurance Company v. Timber Access Industries Co., D.Or., 277 F.Supp. 925; and United States v. Russell Electric Co., S.D.N.Y., 250 F.Supp. 2. We find the opinions in none of these to warrant a conclusion that the plaintiff was under the circumstances here existing precluded from acquiring any property rights in the logs by reason of the mentioned paragraphs in the contract or that defendants are in a position to object. Moreover, the pronouncements of the courts in the cases mentioned tend to enunciate the previously mentioned rule, i. e., such a provision in a contract is solely for the protection of the government agency mentioned and no advantage can be taken of it by any other party. Accordingly, defendants' argument as to their first point is without force.

Defendants' second argument on the appeal, that the federal tax liens by the United States Code are prior in right to liens arising under state law, is predicated upon the assumption that the plaintiff's rights emanated from the lien of the mortgage. As we have already indicated, there is a lack of basis for such an assumption. Even so, we shall discuss the matter of

---

2. Two paragraphs of the timber contract, necessarily read in pari materia, are significant:

"All right, title, and interest in or to any timber included in this contract shall remain in the United States until it has been paid for, cut and scaled * * *."

" * * * The acquisition or assumption by another party under an agreement with the purchaser of any right or obligation of the purchaser under this contract shall be ineffective as to the Forest Service unless and until the Forest Service shall have been notified of such agreement and shall have recognized and approved it in writing signed by the forest officer * * *."

lien priorities as they relate to the present facts, ignoring for this purpose our previous discussion and postulating arguendo that the only right plaintiff could have would be that born of the mortgage lien.

A trilogy of reasons is advanced as showing that federal liens are prior in right to plaintiff's chattel mortgage:

1. The chattel mortgage is but security for a debt, and there is no evidence of any debt owed by R. R. Crow & Co. to appellee nor of any foreclosure proceedings.

2. Federal tax liens by the United States Code are prior in right to liens arising under state law.

3. If a federal tax lien and chattel mortgage lien attach simultaneously the federal tax lien is prior in time.

■ In support of defendants' first mentioned reason they expand the argument by saying, "The Record in this case reveals the chattel mortgage was never foreclosed * * *. There is no evidence of the amount of the debt owed on the chattel mortgage after the real estate mortgage was foreclosed. Even if the chattel mortgage was prior in time to the tax liens, the lien of the mortgage would only be for the amount of the debt owed, but no evidence was offered to show that amount." This statement *assumes* the indispensability of plaintiff's having proved both the amount of the mortgage debt and that a mortgage foreclosure had been effected without the requisite support or authority, and accordingly, requires no consideration.[3]

Even if we were to respond to the unsupported assertion, the record shows the real estate mortgage of August 12, 1960, the chattel mortgage of the same date, and August 12, 1961, supplement thereto, were all given to secure the sums advanced and to be advanced by Huddlestun to R. R. Crow and Co., not to exceed $350,000; the order confirming the return and account of sale of the real estate mortgage found that there was still due the Huddlestun company the sum of $207,755 as of June 10, 1967; and it is undisputed that the Huddlestun chattel mortgage had been assigned by that company to plaintiff. If the $207,755 was incorrect, the defendants were, of course, privileged to enter their contradictory evidence, which they did not do.[4]

An additional noteworthy factor is that the chattel mortgage specifically provides:

"* * * in case default shall be made in the payment of said principal sums * * * or installment * * * or in case default shall be made in the performance of any of the conditions, covenants or agreements of these presents * * * then it shall and may be lawful for said mortgagee to declare the principal sum hereby secured * * * at once due and payable, anything herein or in said note to the contrary notwithstanding, and to enter into and upon any place and *take immediate and full possession* of the whole or any part of said property, goods and chattels * * * to its own use and at its option to sell the same * * *." (Emphasis supplied.)

3. The supreme court on appeal is not required to notice claimed error unsupported by available precedent or cogent argument. Wagoner v. Turpin Park Irrigation Co., Wyo., 489 P.2d 630, 634; Stolldorf v. Stolldorf, Wyo., 384 P.2d 969, 973.

4. Both plaintiff and defendants refer to certain sections of the commercial code, which is inapplicable in light of the provisions of § 34–10–105, W.S.1957 (1971 Cum.Supp.):

"(1) This act shall become effective * * * January 1, 1962, and shall

apply to transactions entered into and events occurring after that date. * * *

"(2) Transactions validly entered into before that date and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated, or enforced as required or permitted by any statute or other law amended or repealed by this act as though such repeal or amendment had not occurred."

After considering these mentioned factors and conditions, we find no basis for defendants' position on this area of the appeal.

The second and third arguments of the trilogy, i. e., that federal tax liens are prior in right to liens under state law and if attaching simultaneously are prior in time, may as generalities not be readily challenged, but generalities are inadequate to furnish a solution of the matter before us. In analyzing the instant situation, we note that there was no simultaneous filing of federal and private liens. Instead there was a mortgage executed by the Crow company to Huddlestun on August 12, 1960, and filed September 9, 1960, the mortgage upon which plaintiff's claim under this segment of the argument was based, while the federal tax liens emanated from later filings beginning January 13, 1961, and at various times thereafter.

The first point to be resolved in this aspect of the case is whether or not the logs were covered by the chattel mortgage to Huddlestun, later assigned to plaintiff, in the clause relating to lumber:

" * * * all lumber now produced or hereafter to be produced by the mortgagor during the life of this mortgage.

"Permission is hereby granted to the mortgagor to market, sell and dispose of all of, or such portions of, said lumber in the regular course of business, and to replace such lumber sold with other property of like kind and character, which property replaced may be purchased or produced either with net proceeds of the mortgaged property sold or otherwise, all of which shall be subject to the operation and effect of this mortgage.

"It being the intention of the parties hereto to include in this mortgage and to thereby create a lien upon all of the mortgagor's presently owned lumber * * and all property of like kind and character acquired hereafter by it during the life of this mortgage."

The provision reflects an intention to cover after-acquired and produced property, which is an important circumstance in determining the controversy.

As to the relative force of federal and state authorize liens, attention must of course be directed to the federal statutes along with other applicable law. Defendants criticize the trial court because it "ignored the Internal Revenue Code and found that the tax lien was inferior in priority to the title of Appellee [plaintiff]" and quote the provisions of 26 U.S.C.A. § 6323 (a), (c) and (h) (1). Although defendants recognize that these provisions have no application to previously vested rights, they maintain that in the instant situation the chattel mortgage of August 12, 1960, could not have been perfected or choate, if at all, until 1966 when the timber was cut, relying upon and quoting from *Continental Finance, Inc. v. Cambridge Lee Metal Co.,* 100 N.J.Super. 327, 241 A.2d 853, 858, a case which is *not* precedent, it having been decided by an intermediate court and later appealed, the controlling decision of the New Jersey Supreme Court appearing at 56 N.J. 148, 265 A.2d 536. Moreover, under the facts there both the terms of the commercial code and 26 U.S.C.A. § 6323 were applicable, not true here.

■ Without question, under the federal laws existing before the 1966 amendment of 26 U.S.C.A. § 6323, a competing lien in order to prevail against a federal tax lien must be definite as to identity of lienor, amount of the lien, and the property to which it attached;[5] but we are convinced that plaintiff satisfactorily established these matters. The lienor here was clearly the Huddlestun Lumber Company; the lien amount on August 12, 1960, was $275,000 (future advances with the $275,000 not to exceed $350,000); the property to which it attached included all of the mortgagor's presently owned lumber and that acquired thereafter by the mortgagor during the life of the mortgage.

5. People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 375, 67 S.Ct. 340, 91 L.Ed. 348.

Defendants present numerous cases as standing for principles which according to the argument prove that the chattel mortgage lien in this instance is inferior, namely, that if a state-created lien and a federal lien attach simultaneously, the latter is entitled to priority; that a creditor's interest if it is to be held prior to a federal lien must be choate and, among other things, attach to specific property before the time the federal lien is perfected; and that once the federal tax lien attaches it continues in full force and effect until the tax liability has been extinguished. It is unnecessary to analyze the cases cited in support of these principles since they are not challenged and for the purposes of argument may be accepted, but it is of significance to mention that none of them deal with mortgages as does the instant claim of plaintiff and consequently are of general purport, lending at best only peripheral assistance. We note also the authority presented tending to hold that the sale of standing timber with the right of buyer to buy and remove it constitutes a sale, while a mere license does not serve to vest title in the licensee until the timber is severed from the land. However, neither the encyclopedic authority nor the cases cited [6] relate to circumstances analogous to the one before us.

Although no situation has been advanced to us which is parallel or similar to the instant controversy, and we have encountered none in our research, we have found most helpful discussions relating to the general subject in the Annotation entitled "Liens competing with federal tax priorities as choate or inchoate, 94 A.L.R.2d 748; and Annotation, 5 L.Ed.2d 929, 936, § 10. Analysis of these annotations discloses that problems concerning priorities arise most often where a mortgage secures future events and that where the property subject to the mortgage lien covers all of the property of the mortgagor together with added or substituted property, it is sufficiently definite to be choate.

In the light of these authorities, a scrutiny of the entire record, and the proper application of controlling principles, we are unwilling to say that the conclusions of the trial court were wrong in stating that:

" * * * Included in the terms of the chattel mortgage of August 12, 1960, was any interest which R. R. Crow & Co. had or might thereafter acquire in logs, whether then or thereafter cut, wherefore any interest which R. R. Crow & Co. then had or which it might thereafter acquire in logs cut and removed from the forest under the terms of the Timber Sale Contract was subject to the prior lien of this mortgage.

" * * * Said lien was a valid and effective lien as of January 13, 1961 and at all times thereafter, including February 7, 1967 * * *."

Affirmed.

---

6. 52 Am.Jur.2d Logs and Timbers § 13; 54 C.J.S. Logs and Logging § 29; Paullus v. Yarbrough, 219 Or. 611, 347 P.2d 620; Anderson v. Moothart, 198 Or. 354, 256 P.2d 257.