CONTINENTAL FINANCE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. CAMBRIDGE LEE METAL CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND UNITED STATES OF AMERICA, DEFENDANTS-RESPONDENTS.

Argued March 16 and 17, 1970—Decided June 1, 1970.

Mr. *William S. Katchen* argued the cause for the appellant (*Messrs. Ravin and Ravin,* attorneys; *Mr. David N. Ravin,* of counsel).

Mr. *Robert J. Cirafesi,* Assistant United States Attorney, argued the cause for the respondent United States of America (*Mr. Frederick B. Lacey,* United States Attorney, attorney).

Mr. *William A. Dreier* argued the cause on behalf of National State Bank, Elizabeth, N. J., *amicus curiae* (*Messrs. Mackenzie, Welt & Dreier,* attorneys).

PER CURIAM: The Law Division held that the federal government had a prior lien as against the claim of Continental Finance to the available fund of $10,812. 100 *N. J. Super.* 327 (1968). The Appellate Division affirmed (105 *N. J. Super.* 406 (1969)) and we granted certification on the application of Continental Finance. 54 *N. J.* 503 (1969). We also granted leave to National State Bank, Elizabeth, N. J. to file a brief and argue the cause, *amicus curiae.*

The complaint filed by Continental Finance alleged that it was "engaged in the financing business through financing of accounts receivable and other collateral"; that on December 19, 1962 it entered into a security agreement with Centre Trucking Co. whereby "accounts receivable generated by Centre Trucking Co., Inc. in the operation of its business would be purchased by the plaintiff, and monies advanced to Centre Trucking Co., Inc. thereon"; that on January 11,

1963 the plaintiff filed a financing statement which "covered all the accounts receivable and all personal property of Centre Trucking Co., Inc."; that subsequently the plaintiff advanced monies to Centre and received "specific assignments of the various accounts receivable generated by Centre Trucking Co., Inc."; that by virtue of the aforementioned security agreement and subsequent specific assignments, all monies due to Centre by Cambridge Lee Metal Co., Inc. were assigned to the plaintiff; that in 1964 the United States of America levied on any monies due Centre by Cambridge Lee Metal Company; and that "[a]ny lien or subsequent lien of the United States of America is junior to that of the plaintiff, and would only attach to those proceeds in excess of the monies due the plaintiff". In regular course there were additional procedural steps and under date of November 10, 1966 a pretrial order was duly entered. That order set forth, among other things, that the fund of $10,812 which was available for distribution among the competing claimants, namely the United States and Continental Finance, "arose from various indebtedness of Cambridge Lee Metal Co. to Centre Trucking Co., based upon unpaid invoices due Centre Trucking Co., Inc., such invoices originating on various dates within the period April 1, 1964 to July 26, 1964." The federal tax lien against the taxpayer Centre Trucking Co., Inc. was duly recorded on February 10, 1964. *See 26 U. S. C. A.* §§ 6321–6323.

At the trial in the Law Division the parties entered into the stipulation of facts fully set forth in 100 *N. J. Super.* at 331–32. That stipulation disclosed, as aforementioned, that the plaintiff had on December 19, 1962 entered into a financing arrangement with Centre, that it had thereafter made advances of monies to Centre largely on the security of Centre's accounts receivable, and that the federal tax lien was duly recorded on February 10, 1964. The accounts receivable which made up the fund of $10,812 represented monies due from Cambridge Lee Metal Co. to Centre on invoices dated April 1, 1964 to July 26, 1964. The stipulation also set

forth that "among the contract rights collateralizing Centre's indebtedness to Continental, were the proceeds of an executory contract made on or about October 17, 1962 between Centre and Garden State Steel Company (later named Cambridge Lee Metal Co., Inc.)." At the argument of Continental's appeal, we called for the original documents which bore in any manner on this stipulation. We were furnished with a copy of the document dated October 17, 1962 which was simply a letter from Centre to Garden State confirming previously agreed rates which Centre would charge Garden State for trucking and storage. Since this document embodied no binding agreements or undertakings whatever by Garden State, we inquired of Continental's counsel whether there were "in fact any binding agreements or undertakings on the part of Garden State Steel Company." In response, counsel advised that they knew of "no other binding agreements other than the October 17, 1962 letter and the invoices which flowed from that."

In holding that the government's lien was entitled to priority, the Law Division applied the federal "choateness" doctrine which it found, so far as pertinent here, had survived the 1966 amendments of 26 *U. S. C. A.* §§ 6321–6323. Under that doctrine, a recorded federal lien, though subordinate to an earlier "specific and perfected" state lien, takes priority over any so-called inchoate lien which is not specific and perfected. The state lien is said to be specific and perfected (or choate) when "there is nothing more to be done—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. Equitable Life Assur. Soc.*, 384 *U. S.* 323, 327–328, 86 S. Ct. 1561, 16 *L. Ed.* 2d 593, 597 (1966); *United States v. Pioneer American Ins. Co.*, 374 *U. S.* 84, 89, 83 S. Ct. 1651, 10 *L. Ed.* 2d 770, 775 (1963); *see* Plumb, "Federal Liens and Priorities—Agenda for the Next Decade," 77 *Yale L. J.* 228, 230 (1967).

Any lien of Continental on the fund of $10,812 was clearly not choate, within the aforestated principles, at the time of

the recording of the federal lien. *See United States v. R. F. Ball Constr. Co.*, 355 *U. S.* 587, 78 S. Ct. 442, 2 *L. Ed.* 2d 510 (1958); *Randall v. Colby*, 190 *F. Supp.* 319, 338–341 (*D. Iowa* 1961); *Plumb & Wright, Federal Tax Liens* 89 (1967); Plumb, "Federal Tax Liens and Priorities in Bankruptcy — Recent Developments," 74 *Com. L. J.* 225, 228 (1969). The accounts receivable which made up the fund admittedly arose on and after April 1, 1964 which was almost two months after the recording of the federal tax lien. They involved contemporaneous trucking and storage which had no relation to prior transactions. Their amounts could, of course, not have been fixed or ascertained at the time of the recording of the federal lien. Indeed as of that time they were nothing more than anticipated future accounts receivable for future business which Centre Trucking Co. might perhaps receive but to which it had no binding claim. When the accounts receivable did actually materialize they became property of Centre to which the prior recorded federal lien immediately attached. *Cf. Glass City Bank v. United States*, 326 *U. S.* 265, 66 S. Ct. 108, 90 *L. Ed.* 56 (1945). Under the choateness doctrine, that lien was entitled to priority over the lien which Continental might seek to assert under the after-acquired property provision in its financing arrangement with Centre. *See* 100 *N. J. Super.* at 336–37; *Plumb & Wright, supra* at 89–90.

The 1966 amendments were designed to relate the federal laws dealing with the collection of delinquent taxes to the more recent developments in commercial practice, particularly the widespread adoption of the Uniform Commercial Code. Though their changes were significant they did not alter the choateness rule so far as it is here pertinent. 100 *N. J. Super.* at 337; *H. R. Rep. No.* 1884, 89th Cong., 2d Sess. (1966) at 35; *Plumb & Wright, supra* at 90; Phillips, "Federal Tax Liens and Secured Transactions: Accommodation or Abdication?," 10 *Santa Clara Lawyer* 30, 33 (1969). The notable situations in which the amendments permit the priority of a security lien to extend to property acquired by the taxpayer

after the recording of the federal tax lien have no relation here. Thus we are not at all concerned with the obligatory disbursements provision (26 *U. S. C. A.* § 6323(c)(4)(B)) or the provision with respect to completion advances (26 *U. S. C. A.* § 6323(c)(3)(B)) or the provision with respect to property acquired by the taxpayer "before the 46th day after the date of tax lien filing." 26 *U. S. C. A.* § 6323(c) (2)(A) and (B). Admittedly here the property was acquired after the 46th day following the filing or recording of the federal tax lien. 100 *N. J. Super.* at 336-37; *see S. Rep. No.* 1708, 89th Cong., 2d Sess. (1966), reprinted in 3 *U. S. Code Congressional and Administrative News* 3722, 3729 (1966).

The Law Division's opinion dealt with the effect of the 1966 amendments on security interests in "contract rights" (100 *N. J. Super.* at 339) and the briefs before us were addressed primarily to that particular issue. Much financing is being done on the security of borrowers' valuable contract rights which may of course include purchase orders on work in progress and the like. Under the terms of the Commercial Code, lenders may appropriately acquire and record security interests in such contract rights which will, as against subsequent state lienors, have priority insofar as the contract rights and their proceeds are concerned. *See N. J. S. A.* 12A:9-106; 12A:9-204; 12A:9-302; 12A:9-306(1). Though the subject might have been handled with much more clarity and specificity, there are indications that, in the overall, the 1966 amendments contemplated that the security interests in such contract rights would have priority over subsequently filed federal tax liens. *See H. R. Rep. No.* 1884, *supra* at 42. On one approach or other substantially all in the academic field have taken the position that under § 6323, as amended in 1966, security interests in such contract rights are legally entitled to priority. *See* Creedon, "Assignments for Security and Federal Tax Liens," 37 *Fordham L. Rev.* 535, 561-65 (1969); *Coogan, Hogan & Vagts, Bender's Uniform Commercial Code Service, Secured Transactions*

154

1287–89 (1969); *Plumb & Wright, supra* at 93–94; Plumb, *supra,* 74 *Com. L. J.* at 229; Plumb, "The New Federal Tax Lien Law," 22 *The Business Lawyer* 271, 274–75 (1967).

██ Stressing the priority afforded to the holder of a "security interest" in § 6323(a) and the breadth of the definition of "security interest" in § 6323(h)(1), along with the House Committee's reference to contract rights within the definition of "commercial financing security" in § 6323(c) (2)(C) *(H. R. Rep. No.* 1884, *supra* at 42), some commentators have expressed general criticism of the Law Division's holding in the instant matter. *See* Creedon, *supra,* 37 *Fordham L. Rev.* at 568–69; Plumb, *supra,* 74 *Com. L. J.* at 229. However, more to the point is the treatment in *Coogan, Hogan & Vagts, supra* at 1289 n. 67a. There the authors pointed out that if "what was assigned was present and future accounts receivable" then the federal tax lien was clearly entitled to priority as against the claim of Continental Finance to the fund in question. The authors expressed the further view that if, on examination of the original documents, it appeared that what was actually assigned were "contract rights" held by Centre then Continental should have been preferred. As we have already indicated, examination of the original documents discloses that there were no contract rights within the contemplation of the Commercial Code or the Federal Tax Lien Act of 1966. When Continental made its advances it relied on Centre's accounts receivable and other property in its possession; surely it placed no reliance on the document dated October 17, 1962 which contained no binding agreements or undertakings whatever by Garden State. While we need not strictly pass on the soundness of the Law Division's treatment of the general subject of contract rights, we are satisfied that under the facts presented here, its holding that the federal government's lien was prior was correct and the Appellate Division's judgment sustaining it is accordingly,

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.