PENETRYN INTERNATIONAL,
INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 1567-73.

United States District Court,
D. New Jersey,
Civil Division.

March 18, 1975.

Willner, Levenstien & Lunetta by Robert A. Levenstien, Morristown, N. J., for plaintiff.

William R. Morrow, Jr., U. S. Dept. of Justice, Tax Div., Washington, D. C., for defendant.

OPINION

CLARKSON S. FISHER, District Judge.

This is defendant's motion for summary judgment brought in an action which purportedly arises under 26 U.S.C.A. Section 7426, civil actions by persons other than taxpayers.

Plaintiff alleges that on March 12, 1970 Cen-Trific Air Products, a New York corporation doing business in New Jersey, entered into a Security Agreement with the Marine Midland Bank of

New York which granted to the Bank a security interest in all accounts and contractual rights then owned or thereafter acquired by the debtor, Cen-Trific Air Products, Inc. A financing statement was filed by the Bank with the office of the Secretary of State of New Jersey on March 17, 1971.

Marine Midland thereafter assigned its security interest in the collateral to the plaintiff on January 8, 1973. Notice of this assignment, as well, was filed with the office of the Secretary of State of New Jersey.

On December 30, 1971 Cen-Trific received $34,599.84 as payment on an account and/or on a contract right for the sale and installment of equipment. These proceeds were placed in the trustee account of Cen-Trific's attorneys. At present, $12,000 remains in this account owing to Cen-Trific Air Products.

Plaintiff asserts that on February 13, 1973, the Department of the Treasury, Internal Revenue Service, served upon the attorneys for Cen-Trific Air Products a Notice of Levy pursuant to Chapter 64, Internal Revenue Code, directed to the $12,000 then being held for Cen-Trific for its failure to pay federal withholding FICA and FUTA taxes for 1970, 1971 and 1972. Although it is not clear what relief plaintiff desires, it appears to urge this court to declare that it has priority to these monies over the claim advanced by the Government.

Defendant, however, contends that there have been numerous notices of assessments and demands for payment, commencing on June 26, 1970 and running through January 11, 1973. Notices of liens were generally filed shortly thereafter, but the taxpayer made no attempt to pay the delinquent taxes. (Notices of tax liens were filed August 20, 1971 through May 3, 1973).

Therefore, the Government asks that the court determine that any claim of the plaintiff be deemed secondary to the claim of the United States for federal taxes, noting that it levied upon funds due the taxpayer in the possession of its attorneys on July 17, 1972 and February 13, 1973.

Plaintiff commenced this action on November 1, 1973 alleging jurisdiction under 26 U.S.C.A. Section 7426 and claiming priority under 26 U.S.C.A. Section 6323.

The Government now moves for summary judgment on the basis that neither section is applicable. Defendant argues in support of this assertion, that the statute of limitations precludes this suit to the extent of sums demanded by levy made more than nine months prior to commencement of this action. The applicable statute, 26 U.S.C.A. Section 6532, reads as follows:

(c) Suits by persons other than taxpayers.—

(1) General rule.—Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action.

Since the Government's levy of July 17, 1972 was made more than nine months before filing of this suit, defendant contends that plaintiff's claim of wrongful levy is not timely as to $10,594.02, the amount demanded as of that date. However, a second levy was made on February 13, 1973 for a total amount of $11,151.49, representing a *cumulative* demand for all monies owed. Plaintiff contends that the effect of the cumulative demand is to negate the defense of the statute of limitations by reactivating the Government's claim for the *total* amount due, not merely the amount due subsequent to the first levy of July 17, 1972.

Although research reveals no case directly on point, an analogy may be made to a similar situation in order to resolve this issue. In a suit by taxpayers for a refund, it was held that where a second claim for refund was filed before the original rejection and served no purpose but to formalize adaptation of a theory already expressed to the IRS and under consideration by it, and there were no

irregularities in the first notice of disallowance of claim, the second notice did not revoke the first and start the statute of limitations for tax refund suits running again. Campbell v. United States, 310 F.Supp. 154 (W.D.Ark.1969).

In a similar case, the Court of Appeals in this Circuit held that where a claim for refund filed in 1961 asserting that taxpayers' payments to corporate creditors on their personal guarantees were deductible as business bad debts was disallowed in 1964 and suit for refund was filed more than two years after notice of disallowance of the claim for refund, suit was barred by the statute of limitations. The bar of limitations, therefore, could not be avoided by amending a second claim for refund filed in 1964 which had never been disallowed and which asserted that the payments made by taxpayers on the corporate obligations were deductible as losses on transactions entered into for profit. Stratmore v. United States, 463 F.2d 1195 (3d Cir. 1972).

■ Thus, in analogizing those above factual patterns to the case before this court, it appears that the mailing of a second notice of levy would not operate to start the statute running again as to the amount claimed in the first notice of levy. It is quite conceivable to this court that the second mailing which included the total amount due was inadvertently sent or was effected due to an over abundance of caution. *Campbell, supra.*

Therefore, defendant's claim for $10,594.02 is prior to that of the plaintiff's, whose interest in that amount is barred by the statute of limitations. Of course, it must firstly be established that a valid lien was perfected by the Government. However, once this is determined, it will be apparent that this action is time barred and that as a result, this court lacks subject matter jurisdiction as to that amount. American Honda Motor Co., Inc. v. United States, 363 F.Supp. 988 (S.D.N.Y.1973).

In order for the federal tax lien imposed by 26 U.S.C.A. Section 6321 to be valid against the holder of a security interest, it is necessary that notice thereof be filed by the Secretary or his delegate. 26 U.S.C.A. Section 6323(a)

Pursuant to 26 U.S.C.A. Section 6323(f)(1), the place for filing with respect to real or personal property is determined by state law.

(A) Under State laws.—

(ii) Personal property.—In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; or

(B) With clerk of district court.—In the office of the clerk of the United States District court for the judicial district in which the property subject to the lien is situated, whenever the State has not by law designated one office which meets the requirements of subparagraph (A);

An affidavit of Robert Levenstien, the attorney for plaintiff, reveals that searches of the office of the Secretary of State of New Jersey and the office of the Clerk of the Federal District Court for the District of New Jersey showed no tax liens filed in either office.

A second affidavit on behalf of plaintiff was submitted by Allen Ross, a New York attorney, who had been engaged by the plaintiff to enforce its rights as a secured party under this and other security agreements. He attests that in the course of his business for plaintiff, his firm was reimbursed for disbursements made for tax lien and UCC searches in the New Jersey Secretary of State's office and in Bergen County, N. J. However, the affiant gives no indication as to the results of these searches.

Nevertheless, under New Jersey law, notices of federal tax liens "may be filed in the office of the county recording officer of the county or counties wherein

the property subject to such liens is situate, and shall be forthwith recorded in a book to be kept for that purpose entitled 'Federal liens,' and shall, immediately upon such filing, be indexed in an index book entitled 'index of Federal liens', which index shall indicate the date of filing, the place of record and the names of the parties thereto". N.J. S.A. 46:16–13.

The defendant's answer asserts that federal tax liens were filed with the Bergen County Clerk and Registrar of Deeds, Hackensack, New Jersey, with the first notice filed on August 20, 1971 and subsequent notices on June 2, July 14, September 28, 1972 and May 3, 1973. However, 26 U.S.C.A. Section 6323 provides:

(c) Protection for certain commercial transactions financing agreements, etc.—

(1) In general.—To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—

(A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—

(i) a commercial transactions financing agreement,

(2) Commercial transactions financing agreement.—For purposes of this subsection—

(A)· Definition.—The term "commercial transactions financing agreement" means an agreement (entered into by a person in the course of his trade or business)—

(i) to make loans to the taxpayer to be secured by commercial financing security acquired by the taxpayer in the ordinary course of his trade or business, or

(ii) to purchase commercial financing security (other than inventory) acquired by the taxpayer in the ordinary course of his trade or business;

but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is *made before the 46th day after the date of tax lien filing* or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing. (emphasis added).

The original financing statement between Marine Midland Bank and Cen-Trific was filed on March 17, 1971 and covered all accounts receivable, chattel paper, inventory and equipment now owned or thereafter owned or acquired by debtor. Marine then assigned its security interest to the plaintiff, filing a statement of assignment on January 19, 1973.

The key date, then, in determining the applicability of the above cited statutes is 45 days after March 17, 1971. At that time, notices of tax liens had already been filed in Bergen County.

In order, therefore, to decide whether plaintiff's assignment takes priority over the tax liens, it is necessary to carefully examine the nature of the security agreement upon which its claim is based, particularly the accounts receivable interest.

■ In determining the priority of a federal tax lien over competing liens. there has consistently been applied the "choate lien test". Continental Finance, Inc. v. Cambridge Lee Metal Co., Inc., 100 N.J.Super. 327, 241 A.2d 853 (Law Div.1968), aff'd, 56 N.J. 148, 265 A.2d 536 (1970). A choate state created lien takes priority over later federal tax liens. Crest Finance Co. v. United States, 368 U.S. 347, 82 S.Ct. 384, 7 L. Ed.2d 342 (1961). However, to be fully choate, a lien must attach to *specified property* and the amount of the lien and identity of the lienor must be estab-

lished so that there is nothing more to be done. (emphasis added). United States v. Equitable Life Assur. Soc., 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966).

 According to ledger sheets furnished by the Marine Midland Bank, the account of Cen-Trific Air Products was begun with a note dated December 4, 1969. The account continued until January 8, 1973 at which time the $17,000 balance due was paid. The sheets reveal that notes were made by individuals and companies other than Cen-Trific with the obligations created by such notes being debited to this account. It appears, then, that prior to and subsequent to the filing of notices of tax liens, the balance due in the account was satisfied and a new balance was simultaneously created upon the making of a new note. New loans were then made by the banks more than 45 days after the tax lien filing so as to take plaintiff outside the ambit of priority status offered by 26 U.S.C.A. Section 6323.

Further, the accounts receivable for after-acquired property could not have been fixed or ascertained at the time of the recording of the federal tax liens. Indeed, as of those times, they were nothing more than anticipated accounts receivable for future business which Cen-Trific might perhaps receive but to which it had no binding claim. Therefore, when accounts receivable did actually materialize, they became property of Cen-Trific to which the prior recorded federal lien immediately attached. See *Continental Finance, supra,* 56 N.J. at 152, 265 A.2d 536.

Finally, it appears that on February 27, 1973 the assets covered by the security agreements, the assignment of which plaintiff paid $17,000, were sold by public auction with an aggregate sum of $15,550 bid by successful bidders, leaving plaintiff with a claim of only $1450 against the $12,000 levied upon by the Government. Of course, this remaining claim has been barred by the statute of limitations as previously discussed.

On the basis of the foregoing, defendant's motion for summary judgment is granted. The United States will submit an appropriate order.