137 N.J. Super. 39 (1975)
347 A.2d 549
ADCO SERVICE, INC., A CORPORATION, ASSIGNEE OF ROBERT J. MORROW, PLAINTIFF,
v.
GRAPHIC COLOR PLATE, A DIVISION OF CYBERMATICS, INC., A CORPORATION, AND GRAPHIC COLOR PLATE, INC., A CORPORATION, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
UNITED STATES OF AMERICA, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 24, 1975.
*41 Mr. Rexford Lyon for Petitioner (Messrs. Sobel & Lyon, attorneys).
Mr. Garland C. Tanks, Assistant United States Attorney, for third-party defendant United States of America (Mr. Jonathan L. Goldstein, United States Attorney, attorney)
YANOFF, J.C.C., Temporarily Assigned.
This case is the second round of litigation resulting from an assignment of a contract by a person whose assets were subject to a lien for withholding taxes due the United States. For a complete understanding it is necessary to summarize the facts of that transaction.
Richard J. Morrow, as corporate officer, became indebted to the United States for withholding of FICA taxes. After *42 he became so indebted he entered into a contract with defendant and third-party plaintiff, Graphic Color Plate, Inc. (Graphic) to sell its products on a commission basis. A portion of the Government's claim was perfected into lien prior to the contract with Graphic, and another portion of it was perfected into lien after the contract with Graphic. All of the liens were perfected before Morrow became entitled to any commissions under his contract with Graphic. Effective April 19, 1971 Morrow entered into a contract with plaintiff, Adco Service, Inc. (Adco), under which he assigned to Adco all rights "under such commissions arrangements and/or contracts." All of the commissions in question were earned after April 19, 1971. In September 1973 Adco started suit against Graphic for the assigned commissions. Graphic joined the United States as third-party defendant. There was a dispute as to the amount due from Graphic under the commissions agreement. While that dispute was pending Graphic moved to interplead the sum it owed. The court deferred ruling on the motion for interpleader until the question of the amount due was determined. Thereafter, Adco and Graphic agreed upon $17,521.88 as the amount due and the court granted the interpleader. The tax lien is greater by far than this sum.
The contest then resolved itself into two issues: (1) whether Adco or the United States was entitled to the sum; (2) whether the interpleading party was entitled to counsel fees. These were resolved by an opinion dated February 25, 1974, which ruled that the United States was entitled to the money, and that no counsel fees would be allowed to the interpleading party. This ruling was affirmed by the Appellate Division under date of July 2, 1975.
Now the attorneys for Adco seek to enforce a lien upon the fund by virtue of a retainer agreement with Adco, dated September 21, 1973, for one-third of all sums collected, and a non-contingent fee of $750.
*43 In brief, the attorneys' position is that they have a special or charging lien under N.J.S.A. 2A:13-5, which is prior to the lien of the United States for taxes, both because it is specifically given a super-priority under the Federal Tax Lien Act (26 U.S.C.A. § 6323) and upon equitable grounds because they created the fund to which the lien attached. Other grounds are urged which need not be considered, since I have concluded that the attorneys are entitled to priority over the lien of the United States.
The complexity of the problem of the order of priority between federal tax liens and liens created by state law is amply demonstrated by the opinions in Continental Fin. Inc. v. Cambridge Lee Metal, 100 N.J. Super. 327 (Law Div. 1968), aff'd 105 N.J. Super. 406 (App. Div. 1969) aff'd 56 N.J. 148 (1970), for reasons other than those set forth in the trial court. Legal writing on the subject has been profuse. See Plumb, "Federal Liens and Priorities  Agenda for the Next Decade," 77 Yale L.J. 228, 605, 1104 (1968); Coogan, "Tax Liens and the U.C.C.," 81 Harv. L.R. 1369 (1968); Note, 86 Harv. L. Rev. 1570, and literature cited in 56 N.J. 148. Pertinent is the observation of Judge Goldberg in Texas Oil & Gas Corp. v. United States, 466 F.2d 1040, 1043 (5 Cir.1972)[1] "We enter with some trepidation the tortured meanderings of federal tax lien law * * *"
The federal "choateness" doctrine was well summarized in Continental Finance, Inc., supra:
Under that doctrine, a recorded federal lien, though subordinate to an earlier "specific and perfected" state lien, takes priority over any so-called inchoate lien which is not specific and perfected. The state lien is said to be specific and perfected (or choate) when "there is nothing more to be done  when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." [56 N.J. at 151] *44 To the same effect, see United States v. Fidelity Philadelphia Trust Co., 459 F.2d 771, 773 (3 Cir.1972); Plumb, supra, at 230.
In 1966 Congress amended the Federal Tax Lien Act by enacting, inter alia, 26 U.S.C.A. § 6323 which reads in pertinent part:
(a) Purchases, holders of security interests, mechanic's lienors, and judgment lien creditors.  The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.
(b) Protection for certain interests even though notice filed.  Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid.

* * * * * * * *
(8) Attorneys' liens.  With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States. [26 U.S.C.A. § 6323, at 61 and 63]
Whether the taxpayer has any property to which the federal lien can attach is determined by state law Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), but the order of priority of liens is determined by federal law. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1954); see Continental Finance, Inc., supra, 100 N.J. Super. 335. In the first phase of this litigation it was determined that the federal lien attached prior to the effective transfer of any rights to plaintiff, primarily under the authority of Glass City Bank v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); Stokley Bros. & Co. Inc. v. Conklin, 131 N.J. Eq. 552 (Ch. 1942); Kahn v. Rockhill, 132 N.J. Eq. 188 (Ch. 1942), aff'd 133 N.J. Eq. 300 (E. & A. *45 1943). The question is whether despite that ruling the attorneys are entitled to what they claim is a "superlien." The attorneys take the position that as to them the 1966 amendments have ended the choateness test; the United States urges that this is true, if at all, only where the attorney represents the taxpayer.
Before the 1966 amendments to the Federal Tax Lien Act, there were cases which struck down an attorney's lien arising from contract for lack of choateness. United States v. Pioneer, 374 U.S. 84, 83 S.Ct. 165, 10 L.Ed.2d 770 (1963); United States v. Pay O Matic, 162 F. Supp. 154 (S.D.N.Y. 1958); "Federal Tax Lien  Competing Liens," 94 A.L.R.2d 748, 782; Plumb, supra at 682, n. 457.
The courts in our State had occasion to pass on aspects of the problem before 1966 in Equitable Life Assur. Society v. Bagin, 45 N.J. 206 (1965), and Textile Products v. Feldan, 54 N.J. Super. 291 (Ch. Div. 1959). In Textile Products the attorney for a defendant who in effect interpleaded the fund was held not entitled to counsel fees as against a federal tax lien. In Equitable Life Assur. Society the competing claims were those of the attorney for a foreclosing mortgagee and a federal tax lien. The attorney claimed attorney's fees as part of taxed costs pursuant to New Jersey court rules. The trial judge held that the federal lien came first, and was reversed by the Supreme Court which distinguished Pioneer, supra, on the ground that the fees were part of taxed costs. However, the Supreme Court was in turn reversed by the United States Supreme Court (384 U.S. 323, 332, 86 S.Ct. 1561, 1566, 16 L.Ed.2d 593 (1966)), which said that
We hold that the federal tax lien is entitled to priority over the claim for the attorney's fee under Rule 4:55-7(c).
Thus, this is the first occasion a New Jersey court has had to pass upon a lien which arises as the result of contract *46 after the enactment of the 1966 amendments.
Prior to these amendments there were cases which upheld an attorney's lien against a prior tax lien, despite lack of choateness, on equitable grounds. In United States v. Hubbell, 323 F.2d 197 (5 Cir.1963), a painting contractor whose assets were subject to a federal tax lien had a claim for extra work which he assigned to his general contractor. The general contractor successfully litigated the claim and obtained judgment. The court held that the contractor and its attorney were equitably entitled to a lien prior to the tax lien, because they created a fund for the benefit of the United States. The court said:
In order to insure that the efforts and expenses of appellees and their attorneys will be "taken care of," we remand this case to the trial court for a determination of the amount of reimbursement equitably due appellees and their attorneys for creating the fund for the benefit of the government. [at 201]
United States v. Kamieniecki, 261 F. Supp. 683 (D.N.H. 1963), is a similar case. There the taxpayer's attorney successfully conducted extensive litigation which resulted in a judgment in his client's favor. The Court held, for equitable reasons, that even though the resulting fund was subject to the federal tax lien, and even though the attorney had no lien under local law, he was entitled to compensation out of the fund. Cf. Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).
United States v. Fidelity Philadelphia Trust Co., 459 F.2d 771 (3 Cir.1972), is also pertinent. In that case the contest for lien priority was between attorneys who represented a taxpayer in some aspect of a sale of assets, and a lien for unpaid income taxes. The significant dates in the transactions were prior to 1966. The District Court held in favor of the attorneys. The Circuit Court reversed on three grounds: first, that it was not established that the attorneys' lien existed under Pennsylvania law; second, that the test of choateness under federal law had not been met; *47 third, that the attorneys were not entitled to compensation on an equitable basis because they had not created the assets by litigation. Referring to Hubbell, Kamieniecki and Sprague, the court said:
Through these cases runs a common thread: a fund reduced to judgment as a result of litigation services rendered by the claimant lawyers for the benefit of others. In the case at bar, there was no litigation associated with the creation of the fund

* * * * * * * *
Finally, always a significant factor in deciding the equities, there is nothing in the record to indicate that the attorney claimants will be, or were, precluded from pressing their claims directly against their clients or the estates thereof. [at 778]
The difficulties in applying the 1966 amendments against a background of the choateness doctrine have arisen mainly in security financing transactions. Continental Finance, Inc., supra; see Talcott, Inc. v. Roto American Corp., 123 N.J. Super. 183, 194 (Ch. Div. 1973); Texas Oil & Gas Corp., supra, and Note thereon in 86 Harv. L. Rev. 1570; Penetryn International, Inc. v. United States, 391 F. Supp. 729 (D.N.J. 1975); Plumb, supra at 232, 233; Coogan supra at 1369, 1370; 1381, 1382. The reason may be, as Judge Foley points out in Nevada R & S Co. v. United States, 376 F. Supp. 161 (D. Nev. 1974):
Initially, it should be noted that the FTLA codifies much of the choateness doctrine.

* * * * * * * *
Thus, although the issue has not been authoritatively settled, it appears that as far as "security interests" are concerned, the FTLA has superseded the choate lien doctrine. [Citations omitted] Phrased differently, Congress has substituted its own definition of "choate" in the area of security interests. See H.R. Rep. No. 1884, supra, at pp. 2 and 35 (holders of "security interests," as defined in 26 U.S.C. § 6323(h) (1), have priority whether or not they are in all other respects definite and complete when the tax lien is filed). [at 168, 169, 170]
To the same effect, Context Construction Co. v. Kennedy, 332 F. Supp. 1213 (S.D. Tex. 1971). See also, Phillips, "Federal *48 Tax Liens and Secured Transactions: Accommodation or Abdication?", 10 Santa Clara Lawyer 30, 59 (1969); Creedon, "Assignments for Security & Federal Tax Liens," 37 Fordham L. Rev. 535, 569 (1969).
But the problems faced in transactions of this type do not arise in the eight classes where the 1966 amendments clearly and unequivocally create super-priorities, even against previously filed tax liens [26 U.S.C.A. § 6323(b)(1)-(8)], of which a certain class of attorneys' liens is one.
We are concerned here only with rights of attorneys whose liens comply with the requirements of the quoted statute. Upon such liens the statute confers a super-priority. See Plumb, supra at 682; PPG Industries, Inc. v. Hartford Fire Ins. Co., 384 F. Supp. 91 (S.D.N.Y. 1974), where the Federal Government did not contest granting priority to the attorney's lien. This is confirmed by the legislative history of the 1966 amendments. Senate Report No. 1708, 3 U.S. Code Congressional and Administrative News (1966), at 3722. With respect to attorneys' liens the report states:
A sixth new category of superpriority added by the bill relates to attorneys' fees. Federal tax liens cover all of a taxpayer's property, including causes of action and any amounts which may be owed to him under judgments or settlements of suits or other proceedings. It is believed that attorneys whose efforts result in obtaining or collecting judgments or settlements should be protected as to their reasonable fees to the extent that the fees are protected under local law. An attorney's fee in such a case can be thought of as similar in concept to the repairman's charge in that it can be expected to enhance the value of the taxpayer's property. [at 3727]
To the same effect, H.R. Rep. No. 1884, 89th Cong. 2d Sess. (1966), at 2 and 6.
This result is consistent with Hubbell and Kamieniecki, supra, since it restricts the attorney's superpriority to "reasonable compensation." It is consistent also with Fidelity Philadelphia Trust Co., supra, since only attorneys "who, under local law, [hold] a lien upon or a contract enforcible *49 against such judgment or amount," 26 U.S.C.A. § 6323 (b) (8) are entitled to priority. That the recovery may be only for the reasonable value of services rendered, of which the agreement is an indication, seems in accord, also, with our local law. Cohen v. Fair Lawn Dairies, Inc., 86 N.J. Super. 206 (App. Div. 1965), aff'd 44 N.J. 450 (1965); Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll, 44 N.J. 442 (1965); Armin v. Kullman, 127 N.J. Super. 600, 605 (Law Div. 1974); New Jersey Mortgage & Investment Corp. v. Young, 134 N.J. Super. 392, 400 (Law Div. 1975).
In this case the attorneys fulfill the statutory prerequisites. They have a lien under N.J.S.A. 2A:13-5 against a cause of action which ripened into judgment.
The United States' argument that this priority is for the benefit only of the attorney who represents a taxpayer against whom the Government claims a lien finds no support in the language of the statute, or its legislative history. Nor is there any basis for its contention that failure to demand attorney's fees in the ad damnum clause of the complaint in Adco v. Graphic bars the attorney's claim.
At oral argument the attorney claiming the lien conceded that his recovery was limited to the reasonable value of the services rendered. The attorney for the United States took the position that if the lien were given priority, the amount should be determined by a plenary proceeding, including a jury trial, citing H & H Ranch Homes, Inc. v. Smith, 54 N.J. Super. 347 (App. Div. 1959). That case involved a proceeding between an attorney and his client to establish the attorney's lien and undoubtedly stands for the proposition for which it was cited. Fuessel v. Cadillac Bar Corp., 63 N.J. Super. 430 (App. Div. 1960), cert. den. 34 N.J. 65 (1961) enunciates the same procedural ruling in a claim by an attorney to establish his lien against, not his client, but the defendant in the cause. However, in Cohen, *50 supra, which is the last word on the subject, the Supreme Court said:
We agree further that a party seeking enforcement of a contractual provision for reasonable counsel fees must ordinarily establish the elements of his claim by plenary proof rather than by affidavit. Here, however, the proceeding before the trial court dealt mainly with other substantive issues and only incidentally with the matter of counsel fee, an affidavit of services had been filed by the attorney for the plaintiffs, and the attorney for the defendants-appellants voiced no objection to this procedure. Under such circumstances there would generally be no reason for requiring plenary proof, provided the record before the trial court, including the affidavit of services, is sufficiently complete to enable it to reach a fair determination as to the extent of the legal services rendered and the reasonable value to be paid pursuant to the contractual provision. The defendants-appellants suggest that here there was confusion at the trial level and they urge that the remand be sustained. We agree that in the particular circumstances presented, the interests of justice will best be served by pursuing the course specifically set forth in the opinion of the Appellate Division, but note that future practice is to be guided by the views expressed in this per curiam. [44 N.J. at 452; emphasis supplied]
In my view this is controlling and sets forth the practice which should be followed. This case dealt "only incidentally with the matter of counsel fee * * *"; there were other substantive issues which mainly concerned the court.
An order should be entered in conformity with the foregoing, either with consent as to form or pursuant to the rules. The Order should provide for presentation of affidavits by the attorneys claiming the lien, with opportunity to the United States to supply answering affidavits.
NOTES
[1] Cert. den. 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973)