[Civ. No. 22042. Fourth Dist., Div. One. Jan. 15, 1981.]

JAMES BREE, Plaintiff, Cross-defendant and Respondent, v.
RICHARD E. BEALL et al., Defendants, Cross-complainants and
Appellants;
CORTEZ INVESTMENT CO., INC., Cross-defendant and
Respondent.

COUNSEL

Stephen L. Wheeler for Defendants, Cross-complainants and Appellants.

Larkin & Appelt, David M. Larkin and Gary N. Appelt for Plaintiff, Cross-defendant and Respondent and for Cross-defendant and Respondent.

OPINION

STANIFORTH, Acting P. J.—James Bree's dba Cortez Development Co., Inc., (Bree) suit sought damages for breach of a subcontractor's

agreement from R. E. Beall Construction Co. and Richard E. Beall, individually (Beall). R. E. Beall Construction Co. (the Company) cross-complained against Bree for damages for breach of a subcontractor's agreement and sought foreclosure of a mechanics' lien. This dispute was by stipulation submitted to arbitration. The arbitrator's award—entered March 15, 1979—ordered Bree, inter alia, "shall pay to *Beall* the sum of $11,515...with legal interest to the date of payment of this award from August 17, 1977, in full satisfaction of all claims made on this action." (Italics added.)

During the pendency of these proceedings, the United States Internal Revenue Service (IRS) served Bree with a notice of levy (Nov. 2, 1978) naming *R. E. Beall Construction Co.* as the taxpayer debtor owing back taxes in the sum of $24,491.82. Beall's attorney (Wheeler) notified Bree's attorney (Larkin) on March 19, 1979, by letter: "This is...to advise you that I hold an attorney's lien on the Judgment and any payment thereon should be made to my trust account." Bree after receipt of the Wheeler letter paid the entire amount of the arbitrator's award ($12,804.68) to the IRS (Mar. 23, 1979). Three days later, judgment was entered in the superior court conformable to the arbitration award, against Bree and in favor of the individual *Beall* for the principal sum of $11,515 plus interest. The sum paid by Bree in response to the IRS notice of levy exceeded the total judgment and accrued interest then owing. Bree demanded a satisfaction of judgment. Attorney Wheeler responded by letter (Mar. 28, 1979): "...I do not feel bound to provide a Satisfaction of Judgment for the following reasons: A. The Judgment is in favor of R. E. Beall, individually while the tax lien is against the corporation [R. E. BEALL CONSTRUCTION CORPORATION]. B. I have a lien against the Judgment for attorney's fees, a fact of which you were advised approximately two (2) week [*sic*] ago."

On that same day, Beall assigned the judgment to Phil Kosh who promptly sought foreclosure of the mechanics' lien granted by the judgment and to levy execution on Bree's bank account. Bree countered with motions to recall and quash the levy of execution and sale order, to compel satisfaction of the judgment, and to amend the judgment nunc pro tunc to correct the judgment to show "*R. E. Beall Construction Corporation*" as the judgment creditor. After hearing the trial court granted each of Bree's motions. Beall, the Company and assignee Kosh appeal from these orders.

## ISSUES

On appeal Beall contends (1) that the order amending the judgment nunc pro tunc substituting R. E. Beall Construction Co. in place of Richard Earl Beall constituted error, (2) that the IRS levy was ineffective against the judgment, (3) the IRS levy does not have priority over the attorney fees and court costs incurred in this litigation, (4) that Bree upon receiving notice of attorney's lien was obligated at least to inquire as to its nature and extent before paying the IRS levy.

## FACTS

These further facts aid in resolution of the issues presented. The framing subcontract with Bree was executed by Richard E. Beall in his individual capacity and referred to a California contractor's license in his name. Both the individual Beall and the Beall corporation executed the retainer agreement with Attorney Wheeler agreeing to a contingency fee of one-third of any recovery made in the Bree lawsuit and granting him a lien against any judgment to protect his court costs and attorney fees. In response to Bree's suit against both Beall and the Beall corporation, the *R. E. Beall Construction Corporation* filed the cross-complaint upon which the arbitrator's award was ultimately made. On September 1, 1978, Bree's attorney was notified of a request to substitute the individual Beall in place of the corporate Beall. Individual Beall (Oct. 16, 1978) in connection with an unrelated matter granted an additional lien for attorney fees against the judgment to Attorney Wheeler in the sum of $2,453.10.

Included in the "Stipulations of Fact for Arbitration" was the following critical language: "That RICHARD E. BEALL, individually and doing business as R. E. BEALL CONSTRUCTION CO. and R. E. BEALL CONSTRUCTION CORPORATION may be considered one party for the purposes of this litigation, and judgment rendered against one may be rendered against all of said parties."

The arbitration award declared "Bree shall pay to *Beall*" and the judgment entered on the arbitration award provided "RICHARD EARL BEALL recover on his cross-complaint from . . . Bree." (Italics added.)

## DISCUSSION

### I

The individual *Beall* argues prejudicial error occurred when the trial court corrected the judgment substituting the corporate Beall in

place of the individual Beall as judgment creditor. The contention ignores the fact that the cross-complaint upon which the judgment was ultimately obtained was filed by the corporate Beall and of even greater significance is the stipulation clearly and specifically agreeing that the individual and corporate Beall "may be considered one party for the purposes of this litigation...." The recitation of the ebb and flow of the individual versus corporate right/responsibility in the contract, lawsuit and pleading, arbitration documents, award and judgment suggest this conclusion: the trial court's warranted treatment—as the parties' express stipulation provides—of the corporate and individual Beall as "one party."

The stipulation in question was drafted by Beall's own counsel; if there is any uncertainty as to its meaning and effect, and we find none, the stipulation must be construed most strongly against the drafting party. (Civ. Code, § 1654.)

If the entire process be viewed with charity, then at minimum it can be said the signed pleadings and the stipulation of the parties point unerringly to a clerical error in the arbitration award and in the judgment itself. In *Meyer* v. *Porath* (1952) 113 Cal.App.2d 808, 811 [248 P.2d 984], the court stated: "A finding, express or implied... that a clerical error exists in the judgment in question is, if supported by substantial evidence, a conclusive finding which binds an appellate court on review." (See also *Bastajian* v. *Brown* (1941) 19 Cal.2d 209, 215 [120 P.2d 9].) Here, clearly, substantial evidence supports the court's conclusion there was a clerical error in the judgment.

## II

Beall next complains that the IRS levy was ineffective against the judgment in this case since it named the corporation, not the individual Beall, as the debtor-taxpayer. Internal Revenue Code section 6332(a) provides "[A]ny person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process." It should be noted parenthetically, seven days after payment of the judgment proceeds to the IRS, a further IRS levy was served (Mar. 30, 1979) naming Beall individually. Beall's argument rests on

the fact that the judgment was entered in favor of the individual instead of the corporation or both. In *George* v. *Bekins Van & Storage Co.* (1948) 83 Cal.App.2d 478, 481 [189 P.2d 301], it was held: "If a judgment is corrected because of a clerical error or mistake either by amendment or the substitution of a wholly different judgment, *the amended or substituted judgment speaks as though originally entered in its amended or substituted form.*" (Italics added.) The individual Beall's rights must be measured against the judgment as corrected, not the original, uncorrected judgment.

Finally the stipulation of the parties makes this argument most specious. That stipulation alone would have warranted payment of an IRS levy (assuming no other intervening equities) made against *either* the individual or corporate Beall for they are one party "for the purposes of this litigation."

### III

 Beall next contends the IRS levy does not have priority over attorney fees and court costs incurred in this litigation. In analyzing this assertion, we start from this premise: "It is now well settled and indeed beyond argument that federal law rather than state law determines the priority of competing liens where one of them is a tax lien asserted by the United States." (*Business Title Corp.* v. *Division of Labor Law Enforcement* (1976) 17 Cal.3d 878, 884 [132 Cal.Rptr. 454, 553 P.2d 614].)

Section 6323(b)(1-8)[1] "clearly and unequivocally create superpriorities, even against previously filed tax liens [ . . . ] of which a certain class of attorneys' liens is one." (*Adco Service Inc.* v. *Graphic Color Plate* (1975) 137 N.J.Super. 39 [347 A.2d 549, 553]; *Connecticut Mutual Life Insurance Company* v. *Carter* (5th Cir. 1971) 446 F.2d 136.)[2]

---

[1] Internal Revenue Code section 6323(b)(8) provides: "Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—(8) With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement,..."

[2] Senate Report No. 1708, 3 U.S. Code Congressional and Administrative News (1966) (p. 3727), with respect to attorneys' liens states: "A sixth new category of superpriority added by the bill relates to attorneys' fees. Federal tax liens cover

The United States Supreme Court declared this act gives priority to eight specified classes of nonfederal lien *"even when the Government has filed notice of the tax lien."* (*United States* v. *Kimbell Foods* (1979) 440 U.S. 715, 738, fn. 41 [59 L.Ed.2d 711, 730, 99 S.Ct. 1448, 1463.)

Thus the pre-1966 rule of priority in time giving priority in right and the requirement of "choateness" do not apply where the conditions of section 6323(b)(8) are met.

We conclude Attorney Wheeler's claim of lien, insofar as it relates to the judgment against Bree, is of the species of lien that meets the requirements of the quoted statute. (See *Adco Service Inc.* v. *Graphic Color Plate, supra*, 347 A.2d, pp. 553-554; Plumb, *Federal Liens and Priorities—Agenda for the Next Decade II* (1968) 77 Yale L. J. 605, 682-683.)

## IV

This rule is but prologue to the decisive issues in this case. ■ While the federal law establishes the priority of these competing liens, it is the state law, not federal law, that controls and determines whether a taxpayer has "property and rights to property" to which a federal lien can attach. (26 U.S.C.A. § 6321; *Business Title Corp.* v. *Division of Labor Law Enforcement, supra*, 17 Cal.3d 878, 885; *Aquilino* v. *United States* (1960) 363 U.S. 509, 513, 514 [4 L.Ed.2d 1365, 1368, 1369, 80 S.Ct. 1277].) Thus the superior court was vested with jurisdiction to pass upon the validity of Wheeler's lien and to determine the "reasonable compensation" to be allowed for his services in obtaining the judgment. (*Lavenburg* v. *Universal Sportwear* (1950) 198 Misc. 318 [98 N.Y.S.2d 160, 164]; *Adco Service, Inc.* v. *Graphic Color Plate, supra*, 347 A.2d 549, 552-554; 28 U.S.C.A. § 2410(b); cf., *Business Title Corp.* v. *Division of Labor Law Enforcement, supra*, 17 Cal.3d 878, 885.)

---

all of a taxpayer's property, including causes of action and any amounts which may be owed to him under judgments or settlements of suits or other proceedings. It is believed that attorneys whose efforts result in obtaining or collecting judgments or settlements should be protected as to their reasonable fees to the extent that the fees are protected under local law. An attorney's fee in such a case can be thought of as similar in concept to the repairman's charge in that it can be expected to enhance the value of the taxpayer's property."

Moreover, the United States government, if the total proceeds of the judgment had not been paid over by Bree, was a proper and necessary party to the proceeding for its tax lien was sought to be reduced. The provisions of 28 United States Code Annotated section 2410(a) waive sovereign immunity from suit and authorize joinder of the United States as a party where enforcement of a lien on property is sought upon which the United States has or claims a lien.

In addition to the attorney fee for services in procuring the judgment, Wheeler claimed an additional lien in the sum of $2,453 arising in connection with a matter (re Watson) not related to the Bree judgment fund. This amount owed is not to be given priority over the federal tax lien under section 6323(b)(8), for it was not for attorney services in "obtaining" or "procuring" such judgment.

V

Bree offers this further ground for invalidating in toto Wheeler's claim of lien on the judgment—inadequacy of notice of the attorneys lien to the judgment debtor. Four days before Bree paid over the entire judgment to the IRS he received a notice in writing informing him of Wheeler's claim of lien. No copy of the agreement creating the lien was sent or filed in the court. The terms and conditions or the amount of the lien were never disclosed to Bree. Wheeler's notification can be fairly interpreted as a demand for the entire judgment to be paid into Wheeler's trust account. No hint is given that Wheeler's claim is to be limited by law to "reasonable compensation" or that legal proceedings were necessary with the United States government as a necessary party to make that determination. This "notice" did not disclose the fact that at least part of the assigned lien(s) constituted claims not entitled to priority over the federal lien. Wheeler did not (has never to this date) sought adjudication of the reasonable compensation subject to his lien in any court of competent jurisdiction.

In this factual matrix, the trial court found the letter sent by Wheeler did not constitute notice of the attorney's lien so as to require Bree to withhold payment of the federal tax levy.

No special form of notice is required by California law. There are no applicable statutory provisions. "[A]ny notice which serves the purpose of protecting the judgment debtor is...sufficient...." (7A C.J.S., Attorney and Client, § 367, p. 730.)

"All that is required is that the adverse party shall be given information sufficiently definite and certain to enable him to protect himself in dealing with the client." (*Carter* v. *Dunham* (1919) 104 Kan. 59 [177 P. 533, 534]; *Goldberg's Loan Office* v. *Evans* (1934) 169 Okla. 397 [37 P.2d 286].) "All that is actually required is that the notice shall contain a general statement of the amount claimed and of the services for which it was rendered." (7A C.J.S., Attorney and Client (supra) § 367, pp. 730-731; fns. omitted.) Beall's reliance upon *Skelly* v. *Richman* is misplaced. (10 Cal.App.3d 844 [89 Cal.Rptr. 556].) *Skelly* factually involved an action for *inducing* breach of a contingent fee contract. The sole case authority relied upon by Skelly for the statement that the notice need *not* include the percentage figure of the fee contract is *Northrup* v. *Hayward* (1907) 102 Minn. 307 [113 N.W. 701], where the court found the defendant had "full notice of the claim" and settlement was made to defraud the attorney of his fee. (P. 702.) Nor do the cases recited in the annotation in 85 A.L.R.2d 863-866 support any blanket excuse from responsibility of an attorney lien claimant who fails to give sufficient notice to the judgment debtor to enable him to protect himself against the clients creditors—here a federal lien claimant.

In the case of *Franchise Tax Bd.* v. *Municipal Court* (1975) 45 Cal. App.3d 377, 380 [119 Cal.Rptr. 552], Golden had served the Los Angeles Police Department with a "Notice of Assignment and Demand for Funds" executed by Burton Marks, an attorney-at-law. The notice recited the seized funds were the property of "our clients" and "have been assigned irrevocably to attorney Burton Marks." Delivery of the funds was demanded forthwith. The appellate court held: "That notice was considered by the trial court and properly determined to be of no legal significance in view of its conclusionary nature and the failure to state from whom the funds were assigned or that the assignor had any right to the money." (Pp. 387-388.)

Attorney Wheeler's letter is similarly a conclusionary statement of claim. There was no delivery of the attorney retainer agreement or assignment. Bree had no factual basis upon which he could protect himself in dealings with Beall's creditor, the IRS.

Bree faced a demand from the United States government for turnover of *all* of the judgment monies. Wheeler's demand was not for a specific part or sum, or for reasonable compensation to be ascertained by a court of competent jurisdiction; Wheeler improperly demanded the entire amount. Had Bree complied with Wheeler's legally unauthorized

demand, he would have subjected himself not only to double payment but also to a 50 percent penalty for failing and refusing to surrender any property subject to levy. (26 U.S.C.A. § 6332 (c)(2).)

We conclude the notice given by Wheeler to Bree did not give Bree sufficient information to protect himself against the client Beall (or corporate Beall's) creditor—the IRS. Substantial evidence supports the trial court's conclusion of insufficiency of the notice given to Bree.

## VI

These further rules of law support the trial court's refusal to enforce Wheeler's lien against Bree. ■ The lawyer's lien is an "equitable right" (*Isrin* v. *Superior Court* (1965) 63 Cal.2d 153, 158, 159 [45 Cal.Rptr. 320, 403 P.2d 728]; *Tracy* v. *Ringole* (1927) 87 Cal.App. 549, 551 [262 P. 73]) and equitable principles enter into the creation, perfection and allowance of such a lien. In seeking a right based on equitable principles Wheeler was required to do equity. Bree was faced with a certain hard choice—not of his own making—a demand from the federal taxing authorities to pay over all the money owed or be penalized. Wheeler's improper nonspecific over demand placed Bree in a trap. Bree's failure to take some affirmative action to encourage or require Wheeler to give a sufficient or proper notice or to advise him to take such legal steps as necessary to protect his lien vis-à-vis the federal claim do not excuse Wheeler's defaults and actual delicts. It was Wheeler's *duty* to notify and perfect his right—not Bree's. Bree was between the proverbial rock and a hard place. His response—perhaps hasty—was to pay—to the extent of the judgment funds—Wheeler's client's tax bill. Thus Bree conferred a benefit on Beall under circumstances in which he cannot be regarded as a volunteer. While Wheeler has lost his lien rights—to reasonable compensation—he retains his contractual right against his principals. Finally there is no hint of any collusion between Bree and Beall to defraud the attorney of his rightful fee. From the foregoing factual matrix, equitable principles emerge which uphold the trial court's refusal to enforce the attorney's lien against Bree.

## VII

■ Beall further contends the additional lien (Watson matter) granted to Attorney Wheeler in the sum of $2,453.10 and the concurrent assignment to Phil Kosh of the entire judgment constituted a

"security interest" in the judgment within the purview of Internal Revenue Code section 6323(a), which provides: "The [federal tax] lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."

As defined by Internal Revenue Code, section 6323(h)(1): "The term 'security interest' means [for purposes of § 6323] any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth."

These additional liens claimed by Beall are not a "security interest" as defined by the Internal Revenue Code section 6323(h)(1), *supra*, for the judgment was not entered until March 26, 1979, and thus did not exist on October 16, 1978.

Furthermore, it is provided under California Uniform Commercial Code section 9301, subdivision (1): "[A]n unperfected security interest is subordinate to the rights of...(b) *A person who becomes a lien creditor before the security interest is perfected.*" Further, Uniform Commercial Code section 9302, subdivision (1) provides: "A financing statement must be filed to perfect all security interests except" those thereinafter described. The claim by Attorney Wheeler here is not such security excepted from the general rule of the Commercial Code requiring a financial statement be filed in order to perfect a security interest.

If it be assumed arguendo that the rendition of services by the attorney constitute "a parting with money or money's worth" within the meaning of Internal Revenue Code section 6323(h)(1), it still does not appear to what extent, if any, Attorney Wheeler has parted with money or money's worth at any time before or on or after October 16, 1978, in connection with the Watson claim of lien.

The agreement of October 16, 1978, to assign the balance of the judgment to Phil Kosh was not a security interest in the judgment as

defined by Internal Revenue Code section 6323(h)(1), for the identical reasons.

In all respects the judgment is affirmed.

Butler, J.,* concurred.

**WIENER, J.,** Concurring and Dissenting.—In denying Attorney Wheeler his lien for attorney fees the majority concludes "[s]ubstantial evidence supports the trial court's conclusion of insufficiency of the notice given to Bree" and "equitable principles emerge which uphold the trial court's refusal to enforce the attorney's lien against Bree." I do not agree with either conclusion.

Internal Revenue Code section 6323(b)(8), provides a federal tax lien does not supersede a lien for attorney's fees against a judgment "to the extent of [the attorney's] reasonable compensation for obtaining such judgment...." Clearly, Attorney Wheeler's lien is in this superpriority category. (See fn. 2, *ante.*) No particular form of notice is required to inform the judgment debtor of the lien. Only that information is required which will avoid placing the judgment debtor at risk.

Here, Wheeler told opposing counsel of his attorney's lien and that he would be claiming priority over the levy to the extent of his fees. His telephone conversation of March 15, 1979, was confirmed by letter the same date, in which he said, "This is also to advise you that I hold an attorney's lien on the Judgment and any payment thereon should be made to my trust account. On payment I will provide you with full satisfaction of judgment and releases of Mechanic's Lien. Please call if you have any questions." Opposing counsel received the letter on March 19, 1979, two days after he had approved the judgment as to form. On March 23, 1979, apparently in a moment of patriotic zeal, Bree felt legally obliged to mail his check to the Internal Revenue Service to satisfy the judgment which was not final (the judgment was filed Mar. 6, 1979) in order to comply with a levy which he had managed to treat with benign neglect for approximately four and one-half months. This record does not indicate why Bree did not respond earlier indicating he was not indebted to Beall, since on the date of the levy he claimed Beall owed him money.

---

*Assigned by the Chairperson of the Judicial Council.

Wheeler's letter requesting opposing counsel to call if he had any questions was in itself sufficient reason for Bree to withhold payment to the IRS. It is not as if this case involved metaphysical issues understood by only those who are able to write on the head of a pin. Lawyering, and the legalese associated with it, hasn't reached that level of complexity where the statement, "I hold an attorney's lien" in the context used here required further clarification. In the jargon customarily used by lawyers that phrase should reasonably have put opposing counsel on notice Wheeler had a lien for fees the amount of which could have been determined with a minimum of effort. A client's triumph should not turn on either his or his lawyer's gamesmanship. At a minimum Bree's counsel had the obligation to telephone Wheeler to explain his client's wish to pay the sum involved directly to the Internal Revenue Service to enable Beall to take appropriate legal steps. If something more formal was required Bree could have done what everyone else does in these situations (e.g. *Business Title Corp.* v. *Division of Labor Law Enforcement* (1976) 17 Cal.3d 878 [132 Cal.Rptr. 454, 553 P.2d 614]) namely file a stakeholder's action, deposit the money and let the Internal Revenue Service and the claimants (here, Wheeler) fight it out. To say that Bree was between a rock and a hard place is to ignore the innumerable legal options, including the basic characteristic of good manners, which were available to him.

Even the trial court did not rest its decision on the fact that notice of Wheeler's lien was inadequate. The court found as a matter of law that the letter, "an unfiled and unrecorded document, [cannot] under the existing Internal Revenue Code, take priority." I am reluctant to join the majority in upholding a factual determination based on the substantial evidence rule when none was made.

I would remand to the trial court for a further hearing to determine the extent of Wheeler's reasonable compensation in obtaining Beal's judgment against Bree and impose liability against Bree accordingly.